UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL JOSUE BUITRAGO MARQUEZ,<br><br>                    Petitioner,<br><br>     v.<br><br>JAMES JANECKA, et al.,<br><br>                    Respondents. | Case No. 5:26-cv-04086-PD<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br><br>**A# 226-105-201** |

Daniel Josue Buitrago Marquez ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking a bond hearing or release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California.  Dkt. No. 1.  The Court has considered the Petition, Respondents' Answer, and Petitioner's Traverse.  Dkt. Nos. 7, 8.

## I.    Background

The Court incorporates by reference, the allegations and attached exhibits in the Petition.  Dkt. No. 1.

## II.   Discussion

Petitioner raises two claims: (1) his re-detention without pre-deprivation notice and process violated his procedural due process rights; and (2) his detention is governed by 8 U.S.C. § 1226(a), not § 1225(b)(2)(A).

Respondents oppose release but do not oppose granting a bond hearing under 8 U.S.C. § 1226(a).  Dkt. No. 7.  In opposing release, Respondents argue that Petitioner was arrested by Immigration and Customs Enforcement ("ICE") during a targeted operation because he failed to report to ICE within 60 days of release and failed to submit his change of address form when he moved from Florida to California.

However, for the reasons set forth below, the Court concludes that Petitioner's re-detention without pre-deprivation process violated his procedural due process rights.

### A.   Procedural Due Process

This Court and others in this District have found that re-detention, without notice or a pre-deprivation hearing, of a noncitizen who had been released on conditions shortly after their entry into the United States and had complied fully with those conditions, violated procedural due process.  *See Cruz v. Lyons, et al.,* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025) (granting temporary restraining order releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with USCIS); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).  *See also M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering

release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### 1.    Private Interest

Petitioner has a substantial private interest in remaining out of custody.  Petitioner entered the United States near Tecate, California, along with his wife and two minor children, on June 27, 2024, presented himself to immigration authorities, was held briefly, and then released on an order of recognizance under 8 U.S.C. § 1226.  Petition at 2; Dkt. No. 1-1 at 12.  Since then, he has lived with his family in Upland, California, applied for asylum, obtained a valid Employment Authorization Document, and has worked to support his family as a delivery driver.  Therefore, he remained at liberty in the United States for approximately two years before he was re-detained on June 17, 2026.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a

protected interest in their liberty.") (collecting cases).  Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'"  *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

### 2.    Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the risk of an erroneous deprivation of a petitioner's liberty interest is considerable where he has not received any bond or custody redetermination.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk).  As of the date of filing this Petition on July 21, 2026, Petitioner had not received any individualized hearing.

Further, in evaluating this risk, courts that have ordered release and a pre-deprivation hearing have considered the petitioner's compliance with all release conditions and criminal history.  *See e.g., Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609 at *2 (N.D. Cal. Aug. 22, 2025) (noting that petitioner who was released on her own recognizance did not violate the conditions of her release which included reporting for any hearing or interview); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States."); *De Vasquez v. Chestnut*, No. 1:25-CV-1999-JDP, 2026 WL 25539 at *4 (E.D. Cal. Jan. 5, 2026) (noting that since release, "there has been no indication that [petitioner] has become a flight risk or danger to the community").

4

Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Further, Petitioner's release was predicated on the Government's determination that Petitioner did not present a sufficient danger or flight risk requiring his detention. *See* 8 C.F.R. § 236.1(c)(8) (providing that the Government may release a noncitizen under Section 1226 "provided that the alien [] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding").

Respondents do not contend that Petitioner has any criminal history. Instead, Respondents appear to argue that Petitioner is a flight risk, and was arrested by ICE, because he did not appear before immigration authorities within 60 days of release and failed to submit a change of address form when he moved from Florida to California. Dkt. No. 7 at 3 (citing Dkt. No. 7-1 at 2–3). In response, Petitioner argues that this reason is pretextual because the government was aware of Petitioner's whereabouts since Petitioner disclosed it on his asylum application and application for employment authorization, which was approved by the government and delivered to his current address. Therefore, Petitioner did not "abscond" from immigration authorities. Dkt. No. 8 at 5–6.

The Court has reviewed the exhibits attached to the Petition and the DHS record attached to Respondents' answer. Attached to the Petition is Petitioner's Notice to Appear, dated June 27, 2024, when he first arrived in the United States. It states that Petitioner is ordered to appear before an immigration judge on July 14, 2026 at 1:00 p.m. at an address in Orlando, Florida. Dkt. No. 1-1 at 6. Notably, Petitioner was arrested by ICE on June

17, 2026—a month before his scheduled appearance at the Orlando office. Therefore, the seriousness of Respondents' claim that Petitioner failed to appear within 60 days of release is lessened by the fact that Petitioner was ordered to appear on a date two years after his entry and release into the country.

Next, Respondents claim that Petitioner failed to inform the government of his change of address. It appears Petitioner was initially scheduled for immigration proceedings at an immigration court in Orlando, Florida, because his family resided there until November 2024. Petitioner's wife's asylum application is attached to the Petition. Dkt. No. 1-1 at 16–27. The application, which was received by the immigration court in Orlando on July 2, 2025, includes information about Petitioner and their children, and lists all her residences from the past five years. *Id.* at 19. It reflects that she lived in Orlando from June 2024 to November 2024, then moved to Upland, California in November 2024. *Id.* Petitioner appears to be included as an applicant for asylum based on his wife's application. *See id.* at 17 (box 24, stating that her spouse is included in the application). Therefore, because Petitioner's spouse listed her changed address on the asylum application (which by extension disclosed Petitioner's address in California), it appears the government was aware of Petitioner's whereabouts. Further, Petitioner asserts that he disclosed his California address when he applied for employment authorization. His employment card is attached to the Petition and is valid from March 12, 2026 to September 11, 2027. *See id.* at 31. While the card does not list Petitioner's address, it appears to have been issued when he was residing in Upland, California. On this record, there is no basis to doubt Petitioner's assertion that his employment authorization card was mailed by the government to his current address in Upland. All of this

information diminishes Respondent's argument that Petitioner absconded from immigration authorities and violated his release conditions.

Therefore, after considering the address information disclosed in the asylum application to the government, and the fact that Petitioner was detained by ICE nearly a month before his ordered appearance at the Orlando immigration court, the Court concludes there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary re-detention.

### 3. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a predetention hearing." *Cruz*, 2025 WL 4051129 at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]' " *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is

minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process. Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it declines to address Petitioner's remaining claim. Nothing prevents Petitioner from raising this claim again in the future, should the Government re-detain Petitioner following the procedures set forth above.

Lastly, in the prayer for relief, Petitioner seeks an order enjoining re-detention "during the pendency of his removal proceedings absent constitutionally adequate notice and an opportunity to be heard, except upon a genuine exigency." Petition at 8. However, the Petition fails to provide a factual or legal basis for ordering such prospective relief at this time.

## III.  Order

For the foregoing reasons, the Petition is GRANTED as to Count One under procedural due process, and the remaining claim is dismissed without prejudice.

Petitioner Daniel Josue Buitrago Marquez (A# 226-105-201) is **ordered released** on his prior conditions of release within 24 hours of this Order.

At the time of release, **Respondents are ordered** to return to Petitioner all of Petitioner's documents and possessions that were seized from him.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) confirming the return to Petitioner of his personal belongings and documents.

IT IS SO ORDERED.

DATED: August 10, 2026

_____
Patricia Donahue
United States Magistrate Judge